```
 1                  UNITED STATES DISTRICT COURT FOR THE

 2                     WESTERN DISTRICT OF MICHIGAN

 3                          SOUTHERN DIVISION

 4
        UNITED STATES of AMERICA,
 5
                        Plaintiff,        Case No.: 1:19-CR-0025
 6        v

 7      MUSE A. MUSE, MOHAMED S. HAJI,
        and MOHAMUD A. MUSE,
 8
                        Defendants.
 9      _____/

10
      HEARING ON DEFENDANT'S JOINT MOTION TO DETERMINE COUNSEL
11
        BEFORE THE HONORABLE GORDON J. QUIST, FEDERAL JUDGE
12
            Grand Rapids, Michigan - Thursday, February 28, 2019
13

14

15      APPEARANCES:

16      For the Government:   Clay M. West, Esq.
                              Christopher M. O'Connor, Esq.
17                            Assistant United States Attorney
                              P.O. Box 208
18                            Grand Rapids, Michigan 49501-0208
                              (616) 456-2404
19
        For the Defendant    Sharon A. Turek, Esq.
20      Muse A. Muse:        (Via Telephonic)
                             James Stevenson Fisher, Esq.
21                           Federal Public Defenders
                             50 Louis Street, N.W., #300
22                           Grand Rapids, Michigan 49503
                             (616) 742-7420
23
        For the Defendant    Mary Chartier-Mittendorf, Esq.
24      Mohamed S. Haji:     125 Ottawa Ave,  N.W., Suite 265
                             Grand Rapids, Michigan 49503
25                           (616) 888-6800
```

```
1        For the Defendant      Richard Zambon, Esq.
         Mohamud A. Muse:       161 Ottawa Ave, N.W. #507
2                               Grand Rapids, Michigan 49503
                                (616) 456-7831
3
         Reported By:           Annette Blough CRR/CRC/RPR/CSR-5191
4                               Certified Shorthand Reporter
                                (800) 408-0070
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                        I N D E X

 2       EXAMINATIONS                                    PAGE

 3                  (None)

 4

 5                        E X H I B I T S

 6

 7

    Exhibit No.        Description              Admitted
 8

 9                  (None)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1        Grand Rapids, Michigan.

 2        Thursday, February 28, 2019 - 10:02 a.m.

 3                THE CLERK:  All rise, please.  The United

 4        States District Court for the Western District of

 5        Michigan is now in session, the Honorable Gordon J.

 6        Quist, District Court presiding.  The Court is in

 7        session.

 8                THE COURT:  Good morning.  Please be seated.

 9                MR. ZAMBON:  Good morning.

10                MS. CHARTIER-MITTENDORF:  Good morning.

11                MR. CHAMPION:  Good morning.

12                MS. TUREK:  Good morning.

13                MR. WEST:  Good morning.

14                THE COURT:  Before we start I have a request

15        for everyone, please talk directly into the microphone.

16        I understand that Ms. Turek is going to be available, she

17        can hear, and it will help me to hear as well.  So the

18        other tricky thing is if you want to talk to your clients

19        or you want to have a conversation, on the microphone,

20        like you have here, hit the middle button where it says

21        push, take a look at it there, and then right there, and

22        if you want a private conversation, because then it's

23        blocked off for me.  But if you whisper to your clients

24        and you don't push that, I could hear some.  I'm not sure

25        I could understand it, but I could hear some sound at
```

1     least.

2            So, with that in mind, we are here in the case

3     of the United States against Muse Muse.  If I pronounce

4     these names incorrectly, please excuse me.

5            MR. ZAMBON:  Your Honor, the client's last name

6     is pronounced Musa.

7            THE COURT:  Musa?

8            MR. ZAMBON:  Yes, Your Honor.

9            THE COURT:  Okay, thank you.

10          Okay.  And then once again, please excuse me,

11    Mohamed Haji is the way I would do it, correct?

12         MS. CHARTIER-MITTENDORF:  Correct, Your Honor.

13         THE COURT:  And Mohamud A. Muse.

14         MR. ZAMBON:  That is correct, Your Honor.

15         Richard Zambon appearing on behalf of Mr. Muse.

16         THE COURT:  Talk in the microphone so we can

17    hear you.  Go ahead.

18         MR. ZAMBON:  Good morning, Your Honor.  Richard

19    Zambon on behalf of the Defendant Mohamud Muse.

20         THE COURT:  Right now we will go through.

21    Ms. Chartier-Mittendorf will represent Mr. Mohamed Haji

22    and Mr. Zambon right now represents Mohamud Abdikadir

23    Muse and Ms. Turek and Mr. Fisher are here then.

24         MR. FISHER:  Yes, Your Honor.

25         THE COURT:  And represents Mr. Muse Muse.  And

```
 1        Mr. --
 2                MS. TUREK:  Correct.
 3                THE COURT: -- Mr. Champion, who has not filed
 4        appearance yet.  What status are you in right now,
 5        Mr. Champion?
 6                MR. CHAMPION:  Well, Your Honor, I guess that
 7        is going to be determined.  I was ordered to appear --
 8                THE COURT:  Well, you hadn't filed an
 9        appearance.
10                MR. CHAMPION:  -- and respond.  So I haven't
11        filed an appearance because nobody signed a consent
12        substitution of counsel, so I'm kind of in limbo.
13                THE COURT:  Okay.  For the Government then?
14                MR. WEST:  Good morning, Your Honor.  Clay West
15        for the United States.  With me is Assistant U.S.
16        Attorney Chris O'Connor and the case agent, Paul Dunham.
17                THE COURT:  What is the case agent's name?
18                THE WITNESS:  Paul Dunham, FBI Special Agent.
19        P-A-U-L, D-U-N-H-A-M.
20                THE COURT:  Okay.  Let me just go through where
21        I am on it, which might be a little different from where
22        you all are on it.  But this is a three-count indictment.
23                Count One charges Defendants with a conspiracy
24        to provide material support to a designated foreign
25        terrorist organization in violation of 18 United States
```

1    Code Section 2339A(b).

2           Count Two charges the Defendants with

3    attempting to provide material support to a designated

4    terrorist organization in violation of 18 United States

5    Code Section 2339B(a)(1).

6           Count Three charges Mr. Muse Muse with making a

7    false statement in a passport application in violation of

8    18 United States Code Section 1542.

9           Counts One and Two, according to my notes,

10   carry a penalty each of up to 20 years in prison plus

11   other penalties; for example, fines, supervised release,

12   et cetera.

13          And Count Three carries a penalty of up to ten

14   years in prison plus other penalties as I've already

15   mentioned.

16          The first three lawyers whose names I have

17   read, that would be Mr. Fisher on behalf of the Defendant

18   Muse Muse and Ms. Turek, Ms. Chartier-Mittendorf on

19   behalf of Mr. Haji, and Mr. Zambon on behalf of

20   Mr. Abdikadir, I'm sorry, Muse Muse, were appointed.

21   Ms. Turek is a current Federal Public Defender and the

22   other counsel, Mr. Zambon and/or Ms. Chartier-Mittendorf,

23   are experienced lawyers who are on the Public Defender's

24   role of competent counsel.

25          And then we received a notice or I received a

1    notice from the three appointed lawyers that Mr. Champion

2    wishes to represent all three of the Defendants in the

3    case.

4         Although none of the parties brought it to my

5    attention, but his desire to represent all three

6    Defendants implicates Federal Rule of Criminal Procedure

7    44(c)(2), which reads as follows, which I will read to

8    you because it puts us right to where we are right now,

9    even though I don't have an appearance from Mr. Champion.

10        44(c)(2) reads as follows:  Court's

11   responsibilities in cases of joint representation, which

12   Mr. Champion would like to do apparently, unless he has

13   changed his mind or his clients have, then I'm going to

14   read it:  The Court must promptly inquire about the

15   propriety of joint representation and must personally

16   advise each Defendant of their right to the effective

17   assistance of Counsel, including separate representation.

18   Unless there is good cause to believe no conflict of

19   interest is likely to arise, the Court must take

20   appropriate measures to protect each Defendant's right to

21   counsel.

22        The Counsel for the Defendants, current Counsel

23   for the Defendants filed a brief which touches on some of

24   these things, including the ruling, that I do not have to

25   allow joint representation of counsel.  I can prohibit

```
 1        that.  Even though the clients might want it, even though

 2        the Defendants might want it, they don't necessarily get

 3        their wishes, and so that is the purpose of the hearing

 4        that we have right now.

 5                 Fortunately, for me, the Administrative Office

 6        of the United States Courts has a book, a bench book it's

 7        called, and Section 1.08 has a subject called Joint

 8        Representation of Co-Defendants with a whole list of

 9        things that I have to analyze and questions that I have.

10                 And let me find out from Mr. Champion to begin

11        with to see how far we have to go on this.  Otherwise,

12        I'm just going to go through the questions and then have

13        to make a decision.  And the case was brought to my --

14        well, I knew about it before, but the Defendants site

15        that Supreme Court case, and I do not have to grant the

16        Defendant's wishes if I come to the conclusion that there

17        would be, for example, conflicts of interest or that one

18        Defendant could be treated different from another

19        Defendant based on, for example, sentencing guidelines

20        and things like that.

21                 So that's where I am in this whole process.

22                 Now, before I go further, now the Defendants

23        might think that Mr. Champion can be the best lawyer for

24        them, and I'm going to want to hear from you in a minute,

25        Mr. Champion.  He has been in front of -- not me but in
```

1      the Western District of Michigan Federal Court five

2      times.  He has not tried a case here, but he has

3      represented people who apparently plead guilty and then

4      represented them through the sentencing phase here.

5             The last case was closed in March 2015 when two

6      cases were resolved on the same day.

7             Now, before I get into this whole thing, one of

8      the things that came to my thought processes is -- and,

9      Mr. Champion, you can speak to this perhaps -- is because

10     you might have had conversations.  Have you had

11     conversations with these gentlemen?

12           MR. CHAMPION:  I did travel out to White Cloud

13     to meet with them on Saturday, February 2nd, to have them

14     sign consent forms for substitution of counsel.

15           THE COURT:  All right.  Yes, I saw those.

16     Those were furnished to me, I think, in the brief filed

17     by the Court-appointed counsel.

18           One thing that occurred to me, and I might be

19     totally off base, out of range here, and I don't mean to

20     insult anyone, but I've been reading about some of these

21     groups from -- in Africa where women are treated

22     differently.  And I wonder if there is anything that you

23     have been able to detect, Mr. Champion, or anybody else,

24     or they want to speak to, that makes it difficult for the

25     Defendants, any of them, to communicate properly with one

1          of their Court-appointed attorneys because they are

2     women?

3                    MR. CHAMPION:  I've not seen anything like

4     that.

5                    THE COURT:  You have not seen anything like

6     that?

7                    MR. CHAMPION:  No.

8                    MS. TUREK:  Your Honor, this is Sharon Turek.

9     I have not experienced that at all.

10                   THE COURT:  I'm sorry, what did she say?

11                   MS. CHARTIER-MITTENDORF:  She has not

12    experienced it.

13                   THE COURT:  Ms. Chartier-Mittendorf, have you

14    experienced that?

15                   MS. CHARTIER-MITTENDORF:  No, not at all.

16    Mr. Haji and I have been able to communicate just fine.

17                   THE COURT:  Okay.

18                   MS. CHARTIER-MITTENDORF:  We've had no issues

19    in that regard.

20                   THE COURT:  All right.  We are over that, and

21    we don't have to go over that.

22                   MS. CHARTIER-MITTENDORF:  Correct.

23                   THE COURT:  All right.  This is an important

24    case to all the people involved, so I'm going to ask

25    questions of the Defendants and I want each Defendant to

1        promise to tell me the truth before I ask a question.  I

2        want to make sure that each of you is competent to answer

3        the questions, so I'm going to ask you to promise to tell

4        the truth as I said during this hearing.  And the truth,

5        I'm not going to get into the facts of the case

6        particularly, but I want to make sure that each person

7        here is competent to proceed.

8                So, Mr. Muse Muse, do you promise to answer the

9        question honestly, sir?

10               MR. MUSE MUSE:  Yes.

11               THE COURT:  Okay.  Mr. Haji, do you promise to

12       answer the questions honestly and truthfully?

13               MR. HAJI:  Yes.

14               THE COURT:  Thank you.

15               And Mr. Abdikadir -- I'm sorry, too many

16       syllables for my tongue.

17               MR. ZAMBON:  Your Honor, his name is Mohamud

18       Muse.

19               THE COURT:  Okay.  Mohamud Muse, do you promise

20       to answer these questions truthfully?

21               MR. MOHAMUD MUSE:  Yes.

22               THE COURT:  Thank you.

23               Starting with Mr. Muse Muse, just a minute, I

24       want to write this down, how old are you, sir?

25               MR. MUSE MUSE:  I'm 20.

```
 1                    THE COURT: Twenty.

 2                    How far did you go in school?

 3                    MR. MUSE MUSE:  A semester in college.

 4                    THE COURT:  Okay.  So you're a high school grad

 5         then?

 6                    MR. MUSE MUSE:  Yeah.

 7                    THE COURT:  And you're able to speak English

 8         perfectly?

 9                    MR. MUSE MUSE:  Yes.

10                    THE COURT:  That is pretty obvious.

11                    In the past 24 hours, have you taken any pill,

12         drug, medicine of any kind or had any alcoholic beverage?

13                    MR. MUSE MUSE:  No.

14                    THE COURT:  Now, when is the last time you

15         talked with him, Mr. Champion?

16                    MR. CHAMPION:  Saturday, February 2nd, Your

17         Honor.

18                    THE COURT:  Did he appear competent at that

19         time?

20                    MR. CHAMPION:  He did.

21                    THE COURT:  Mr. Fisher, when did you talk to

22         him?

23                    MR. FISHER:  This morning.

24                    THE COURT:  Did he appear competent at that

25         time?
```

```
 1              MR. FISHER:  Yes, Your Honor.
 2              THE COURT:  Does the prosecutor have any
 3      question about his competence at this stage?  You can
 4      just remain seated.
 5              MR. WEST:  No, Your Honor.
 6              THE COURT:  Then let's go to Mr. Haji.
 7              How old are you, Mr. Haji?
 8              MR. HAJI:  Twenty-six.
 9              THE COURT:  How far did you get in your
10      education?
11              MR. HAJI:  Some college.
12              THE COURT:  So high school diploma?
13              MR. HAJI:  Yes.
14              THE COURT:  Okay.  In the past 24 hours, have
15      you had any drug, medicine, or pill of any kind, or drunk
16      any alcoholic beverages?
17              MR. HAJI:  No.
18              THE COURT:  Ms. Chartier-Mittendorf, have you
19      been able to talk to him at all recently?
20              MS. CHARTIER-MITTENDORF:  We have.  We spoke on
21      February 26th and we also spoke this morning.  I have no
22      issues or concerns about Mr. Haji's competency.
23              THE COURT:  All right.  Well, then we have, I
24      want to take Mr. Zambon's advice here, Mr. Mohamud Muse?
25              MR. MOHAMUD MUSE:  Yes.
```

```
1                    THE COURT:  And how far did you get in school,
2         sir?
3                    MR. MOHAMUD MUSE:  Some college.
4                    THE COURT:  Some college.
5                    You are able to understand and speak English,
6         obviously; we were having this conversation now?
7                    MR. MOHAMUD MUSE:  Yes.
8                    THE COURT:  Have you taken drug, pill,
9         medicine, or alcoholic beverage in the last 24 hours?
10                   MR. MOHAMUD MUSE:  None.
11                   THE COURT:  Did you -- do each of you
12        understand what we're going to do today then?  I'm sorry,
13        yes, go ahead, Mr. Muse.
14                   MR. MUSE MUSE:  Yes.
15                   THE COURT:  They are all indicating, yes.
16                   I find each Defendant as competent to proceed
17        today.
18                   I've already explained the seriousness of the
19        charge and the maximum punishment for each count.  If at
20        any time one of you does not understand something or have
21        any question, consult your lawyer or ask me any question
22        that you want.  I want to make sure that you will
23        understand this.
24                   And the proceedings can be continued to another
25        day if you wish to consult with another lawyer as well.
```

1              The United States Constitution, gentlemen,

2        gives every Defendant the right to effective assistance

3        of Counsel.  When one lawyer represents two or more

4        Defendants in a case, the lawyer may have trouble

5        representing all of the Defendants with the same

6        fairness.  This is a conflict of interest that denies the

7        Defendant the right to effective assistance of Counsel.

8        Such conflicts are always a potential problem because

9        different Defendants may have different degrees of

10       involvement or culpability.  Each Defendant has a right

11       to a lawyer who represents only him or her.

12              So, Mr. Muse, do you understand that?

13              MR. MUSE MUSE:  Yes.

14              THE COURT:  Mr. Haji, do you understand that,

15       sir?

16              MR. HAJI:  Yes.

17              THE COURT:  And, Mr. Mohamud Muse, do you

18       understand that?

19              MR. MOHAMUD MUSE:  Yes.

20              THE COURT:  I'm going to point out now various

21       ways in which dual representation, or you might say

22       triple representation here, might work to a Defendant's

23       disadvantage.

24              Listen carefully to what I'm saying now,

25       gentlemen.

1     This may be done by giving the Defendant a form

2  to read or by advising the Defendant in the following

3  way, and I'm going to now advise you:  First, dual

4  representation or triple representation may inhibit or

5  prevent Counsel from conducting an independent

6  investigation in support of each Defendant's case.

7     For example, the attorney-client privilege may

8  prevent your lawyer from communicating to you information

9  gathered from another Defendant.

10     Do you understand that, each of you?

11     MR. MUSE MUSE:  Yes.

12     MR. HAJI:  Yes.

13     MR. MOHAMUD MUSE:  Yes.

14     THE COURT:  The Government may offer immunity

15  or offer to recommend a lesser sentence to one Defendant

16  for cooperating with the Government.  Should you receive

17  such an offer, your lawyer ought to advise you whether or

18  not to accept it; but if your lawyer advises you to

19  accept the offer, it may harm the cases of the other

20  Defendants represented by that same lawyer.

21     Do you understand that, Mr. Muse Muse?

22     MR. MUSE MUSE:  Yes.

23     THE COURT:  And, Mr. Haji?

24     MR. HAJI:  Yes.

25     THE COURT:  And Mr. Mohamud Muse?

1              MR. MOHAMUD MUSE:  Yes.

2              THE COURT:  In addition, the Government may let

3       a Defendant who is not as involved as other Defendants

4       plead guilty to lesser charges that the other Defendants

5       -- after the guilty plea, the other charges than the

6       other Defendants.

7              After the guilty plea, however, the Government

8       may require the Defendant to testify.  A lawyer who

9       represents more than one Defendant might recommend that

10      the first Defendant not plead guilty in order to protect

11      the other Defendants that the lawyer represents.

12             On the other hand, the lawyer might recommend

13      that the first Defendant plead guilty, which might harm

14      the cases of the other Defendants.

15             Are you following me, Mr. Muse Muse?  Do you

16      understand that?

17             MR. MUSE MUSE:  Yes.

18             THE COURT:  And what about you, Mr. Haji?

19             MR. HAJI: Yes.

20             THE COURT:  And, Mr. Mohamud Muse?

21             MR. MOHAMUD MUSE:  Yes.

22             THE COURT:  Triple representation or dual

23      representation may affect how your lawyer exercises

24      preemptory challenges or challenges for cause during jury

25      selection.

1           Potential jurors who may be perceived as

2      favorable to you may be perceived as harmful to the other

3      Defendant or Defendants or jurors who may be perceived as

4      favorable to other Defendants maybe harmful to you.  In

5      other words, another conflict.  They balance off one

6      Defendant against another.

7           Mr. Muse Muse, do you understand that?

8           MR. MUSE MUSE:  Yes.

9           THE COURT:  Mr. Haji?

10          MR. HAJI:  Yes.

11          THE COURT:  And, Mr. Mohamud Muse?

12          MR. MOHAMUD MUSE:  Yes.

13          THE COURT:  Don't just say, yes.  I mean, if

14     you don't understand it, listen, this stuff is not easy.

15     Just don't -- you know, think about it.  And I'm going to

16     give you an opportunity, I'm not going to make a decision

17     today, because I'm going to give you an opportunity to

18     think about all these things; but it's very important

19     that you think about them because, you know, this is your

20     future.  It's not mine.  It's your future.  And my job is

21     to make sure not only that you have a fair trial but that

22     you know that you've had a fair trial.  My job is to do

23     that, do the best I can to give you guys a fair trial

24     with all your constitutional rights.

25          Sometimes one of the Defendants represented by

1     a lawyer will take the stand to testify in his or her own

2     behalf.  In order to represent the other Defendants

3     fairly, the lawyer should question the Defendant on the

4     stand as completely as possible.

5              However, the lawyer may not be able to do that

6     because he or she cannot ask the Defendant as a witness

7     about anything that the Defendant has told the lawyer in

8     confidence.

9              In other words, if one of you says something in

10    confidence to Mr. Champion, he can't use that necessarily

11    to either help another client if it hurts his client.

12             And, Mr. Champion, you're going to have to

13    answer these questions, too.

14             MR. CHAMPION:  Yes.

15             THE COURT:  I don't know if you have thought

16    about them.

17             MR. CHAMPION:  I have.

18             THE COURT:  Okay.  But do you understand that,

19    Mr. Muse?

20             MR. MUSE MUSE:  Yes.

21             THE COURT:  And, Mr. Haji?

22             MR. HAJI:  Yes.

23             THE COURT:  And, Mr. Mohamud Muse?

24             MR. MOHAMUD MUSE:  Yes.

25             THE COURT:  Each one has answered yes.

 1                    The best defense for a single Defendant often

 2          is the argument that while the other Defendants may be

 3          guilty he or she is not.

 4                    A lawyer representing two or more Defendants

 5          cannot effectively make such an argument because it hurts

 6          one of his clients.  It helps one, hurts the other, so he

 7          can't ask it, so you're all in the same boat.  One of

 8          you, two of you, or three of you might have been able to

 9          get out.

10                    Do you understand that, Mr. Muse Muse?

11                    MR. MUSE MUSE:  Yes.

12                    THE COURT:  And what about you, Mr. Haji?

13                    MR. HAJI:  Yes.

14                    THE COURT:  And what about you, Mr. Mohamud

15          Muse?

16                    MR. MOHAMUD MUSE:  Yes, sir, I'm listening.

17                    THE COURT:  Thank you.

18                    MR. MOHAMUD MUSE:  I understand.

19                    THE COURT:  Evidence that helps one Defendant

20          might harm another Defendant's case.  When one lawyer

21          represents two or more Defendants, the lawyer might offer

22          or object to evidence that could help one of his clients,

23          one Defendant, but harm another.

24                    In other words, who is there at a particular

25          time, one Defendant might say I was and the other

1             Defendant might say, well, I was, so it's a conflict and

2        how is the lawyer going to handle that?  It's not easy.

3                  Do you understand that, Mr. Muse Muse?

4                  MR. MUSE MUSE:  Yes.

5                  THE COURT:  And, Mr. Haji?

6                  MR. HAJI:  Yes.

7                  THE COURT:  And, Mr. Mohamud Muse?

8                  MR. MOHAMUD MUSE:  Yes.

9                  THE COURT:  Regarding sentencing, dual

10       representation would prohibit the lawyer from engaging in

11       post-trial negotiations with the Government as to full

12       disclosure by one Defendant against the other.  It would

13       also prohibit the lawyer from arguing a relative

14       culpability of the Defendants to the sentencing Judge.

15                  In many sentencings where we have joint

16       Defendants, particularly in drug cases, a lawyer will

17       argue on behalf of his client, well, my guy just

18       followed, you know, the lead of somebody else.  He's not

19       the main guy here.  The main guy is Mr. Muse Muse.  I'm

20       just picking names.  I don't mean that.  The main guy is

21       Mr. Muse Muse, not me.  Well, you can't make that

22       argument if he represents Mr. Muse and another Defendant.

23       You can't make that argument.  He's really stuck.

24                  So a minor participant might not be able to

25       make the argument that he is a minor participant, which

1        would be a lower sentence, as distinguished from the

2        leader.  The leader would be the person that organized

3        this, got other people involved in this, thought it was a

4        good idea and sold it to others.  The argument can't be

5        made, my guy was sort of tagging along here.

6               Do you understand that, Mr. Muse?

7               MR. MUSE MUSE:  Yes.

8               THE COURT:  And, Mr. Haji?

9               MR. HAJI:  Yes.

10              THE COURT:  And, Mr. Mohamud Muse?

11              MR. MOHAMUD MUSE:  Yes, sir.

12              THE COURT:  Now, Mr. Champion, the next thing

13       applies to you.  And then I'm just going to read this to

14       you here.

15              An attorney proposing to represent

16       Co-Defendants should be required to assure the Court that

17       there will be no conflict that could result in a lack of

18       effective assistance of counsel or other prejudice to any

19       Defendant.

20              If you're not prepared to answer that question

21       now, I'll give you more time.  But that is an important

22       question.  In other words, I have already heard from the

23       brief filed by the other Counsel that there is a

24       conflict.  And have you perceived a conflict?

25              MR. CHAMPION:  There is always a potential for

1       conflict, Your Honor; but I don't believe there is an
2       actual conflict as evidenced by the fact that the U.S.
3       Attorney's Office has taken no position in this matter.
4       If they felt there was an actual conflict, I would expect
5       that they would object.
6              THE COURT:  Well, they are going to say there
7       is a conflict the first time they talk to somebody with a
8       lawyer being present.  That's the problem.  They are
9       going to say, Mr. Muse Muse, you know, we are going to --
10      this is speculation, I know, but it's based on
11      experience, and you are smiling so you know what I'm
12      talking about, Mr. Muse Muse, you know, you're not a real
13      bad guy.  You are, you know, just sort of tagalong here
14      and we can cut a deal with you but the deal requires you
15      to tell us the involvement of Mr. Haji, for example.  And
16      it requires you to tell us the involvement of Mr. Mohamud
17      Muse.  And you do that and you are looking now at, you
18      know, three counts, we will drop the first two counts and
19      make it the third count, the third count being lying on
20      their passport, maximum of ten years instead of a maximum
21      of 20, the guidelines are a lot lower, what a deal.  You
22      got to go for it.  And Mr. Champion is going to say?
23             MR. CHAMPION:  Your Honor, in 2003 I had
24      multiple co-defendants, three of them, in front of Judge
25      Lamb in Circuit Court in Kalamazoo.  The prosecutor

1      objected, saying Mr. Champion can't effectively sell my

2      deal to each one of these co-defendants and Judge Lamb

3      said Mr. Champion is not your salesman, that would be my

4      response.

5              THE COURT:  Well, I'm not asking you to be a

6      salesman.  I'm asking you to make -- you would be in

7      my -- and what Judge was that?

8              MR. CHAMPION:  That was Judge Richard Lamb.

9              THE COURT:  Where is he a Judge?

10             MR. CHAMPION:  Kalamazoo.  I believe he is

11     retired now.

12             THE COURT:  He is not a Federal Judge, but a

13     State Judge.

14             MR. CHAMPION:  No.

15             THE COURT:  Well, I'm just reading what I've

16     got here.  And I'm talking about, you know, 25 years as a

17     lawyer, and way much longer than I ever thought I would

18     be here, 20 some or 5, 6, 7 years as a Federal Judge.

19     It's typical in our Federal System that something like

20     this occurs.  And it's not a matter of selling anything.

21     It's not a matter of selling anything.  It's a matter of

22     giving effective representation, effective individualized

23     representation to each one of your clients.  And I don't

24     know how you can do that if one client is offered a

25     ten-year deal with a guideline range, let's say, of three

1     years as distinguished from a 20-year charge with a

2     guideline range that will be substantially higher.

3            MR. CHAMPION:  I understand, Your Honor.  The

4     day before I was -- before I met them in White Cloud, I

5     was hired by the family.  They expressed to me an

6     interest in having one attorney represent all of their

7     boys.  They were concerned that perhaps multiple

8     attorneys might have an interest in turning them against

9     one another and they didn't want to see that.

10           THE COURT:  Yeah.  Now, that comes from one of

11     the families as I understand it.  Am I correct?

12           MR. CHAMPION:  No.  That's -- these three

13     gentlemen belong to two families.

14           THE COURT:  Yeah, okay, I'm saying but that

15     comes from one of the families?

16           MR. CHAMPION:  No, Your Honor.  They are all

17     here, Your Honor.

18           THE COURT:  I see them.  So --

19           MR. CHAMPION:  Unless somebody changed their

20     mind.

21           THE COURT:  Well, that is another point.  I

22     mean, have you talked to each one of them?  Have you

23     talked to them specifically about what I'm talking to you

24     right now?

25           MR. CHAMPION:  Honestly not in as much depth as

1        we have already gotten into, but I did express to them

2        that if at any time there was an actual conflict, as

3        opposed to a potential one, if one of them started

4        pointing a finger at the other one or asked for a better

5        deal than somebody else, then I would have an actual

6        conflict and I would have to possibly withdraw from one

7        or more of their representation.

8                THE COURT:  They would have to start over

9        again.

10               Okay.  Now, in the brief filed by current

11       counsel, and I don't know which lawyer it was,

12       Mr. Zambon, you said that there is already conflicts.

13       Let's hear about that.

14               MR. ZAMBON:  Thank you, Your Honor.  Counsel --

15       appointed counsel had the benefit of the almost six-hour

16       detention hearing as well as --

17               THE COURT:  Can you bring that closer to you,

18       Mr. Zambon?  Just move your paper there and you can move

19       the mic forward.

20               MR. ZAMBON:  Thank you, Your Honor.  The

21       detention hearing took place over two days.  The first

22       day we went from 2:00-5:00 on January 25.  It was three

23       hours of testimony by Agent Dunham and introduction of

24       numerous exhibits.

25               We followed that up the following Thursday, the

1      31st of January.  Defense originally came in on a

2      complaint in between the two detention hearings, the

3      Grand Jury indicted.  So we continued the detention

4      hearing after the arraignment on the indictment, the

5      initial pretrial conference, and we have had the benefit

6      of the Government's case being brought out during the

7      detention hearing, not only mentioning or reviewing the

8      12-page complaint but initial pretrial conference, and

9      since then we have had some initial discovery.

10         Some of the things that we have found either

11     through the detention hearing and initial pretrial

12     conference is that one of the Defendants consented to a

13     four-hour post-Miranda interview.  Now, that is being

14     transcribed.  There are some transcription problems, but

15     we have some concerns about that because during the

16     four-hour interview on a conspiracy case my guess would

17     be that there were some statements made which could lead

18     to Brutten problems, which could implicate the other

19     Defendants.

20         I don't have that information, but I bet that

21     would be my guess based on my experience.

22         We also know that one of the Defendants

23     endorsed a statement that was written by Agent Dunham,

24     and the statement was inculpatory, and the Defendant

25     signed it that this is an accurate -- what you wrote,

1       Mr. Dunham, is what I told you, so we have a problem

2       there.

3               We also know that this conspiracy took place

4       over a number of years and that there is pre-conspiracy

5       transcripts, texts, What's App, Facebook, that there's

6       thousands and thousands of pages of documents which need

7       to be reviewed, which are between the Defendants.  And,

8       again, with this being a conspiracy case, we think that

9       there is a conflict there.  And that's what we wrote to

10      Mr. Champion and said we think there is a conflict and

11      the ball is in your Court, and that's my quote.  You take

12      action out and then file something, which I would think

13      would be the normal course of procedure, that he should

14      have filed something.

15              And also there was no waiver of any conflict

16      that accompanied the proposed consent order.  I think we

17      would all have felt better if we had seen something like

18      that, but there has been no communication from

19      Mr. Champion.  And that's why we felt compelled we had to

20      bring this before the Court.

21              Also, we felt as there is two things here, one

22      is as Officers of the Court and we have to let the Court

23      know of these potential issues so that the Court can

24      anticipate the problems and deal with them.  We can't

25      anticipate a problem unless you know about it, so we

1          brought that issue to the Court.

2                    THE COURT:  Well, what is -- I forget the name

3          of the case, but the case talks about exactly that, we

4          can't anticipate everything.

5                    MR. ZAMBON:  Right.

6                    THE COURT:  Wee against the United States.

7                    MR. ZAMBON:  The Wee Case or the United States

8          versus William, which adopted the language from the Wee

9          Case.

10                   And also the Court cited Federal Rule Criminal

11         Procedure 44C, which is basically an adoption of the

12         Michigan Rules of Professional Conduct, which we are all

13         obliged to stand by.  And that rule deals with conflicts

14         of interest, and it does not prohibit conflicts of

15         interest, but requires counsel to first state that he

16         reasonably believes representation will not be adversely

17         affected and after client consultation explaining all of

18         the potential conflicts as the Court went through with

19         our clients.  And the commentary to that rule --

20                   THE COURT:  The Michigan rule you're talking

21         about?

22                   MR. ZAMBON:  Criminal Act, yes, Your Honor.

23         1.7 Commissary says that the potential for conflict of

24         interest in representing multiple Defendants in a

25         criminal case is so grave that ordinarily a lawyer should

1      decline to represent more than one co-defendant.  On the

2      other hand, common representation of persons having

3      similar interests is proper if the risk of adverse

4      effects is minimal and requirements of Paragraph B, the

5      disclosure paragraph, are met, end quote.

6            We know it's not our job to determine if there

7      is a conflict, that is up to the Court.  We also know

8      that we had to bring it before the Court at this point,

9      early on, rather than at some point down the road.

10           THE COURT:  Well, I'm required to do it as soon

11     as possible.  I mean, the Rule 44 talks about that and it

12     specifically says it, that's why we are here.

13           MR. ZAMBON:  That is correct, Your Honor; and

14     why we brought this before the Court.  We did not want

15     this happening six months or a year down the road, or

16     whenever.  So, again, and we all know that the clients

17     have a right to representation of counsel.  And usually

18     it's with their counsel of their choice, but it's not an

19     unfettered right.  And I think we have all explained that

20     to our clients and we are leaving it up to the Court to

21     make its decision.

22           THE COURT:  All right, Ms. Chartier-Mittendorf,

23     anything?

24           MS. CHARTIER-MITTENDORF:  Thank you.  I concur

25     with Mr. Zambon.  The reason the motion was brought was

1      no motion was brought by Mr. Champion to represent the

2      clients, yet we continued to hear that Mr. Champion was

3      representing them.  And so, in consultation, Mr. Fisher,

4      Ms. Turek, Mr. Zambon, and I wanted to get the issue in

5      front of the Court.

6            As long as I represent Mr. Haji, I need to make

7      sure that his rights are protected and that I do

8      everything that is in his best interest.  I have very

9      serious concerns about actual conflicts.  That doesn't

10     mean that these three young men will split apart from

11     each other and that the lawyers would not work together.

12     But based on what we have seen so far, as well as the

13     302s, in my opinion this is not a potential conflict,

14     it's an actual conflict.

15           If the Court determines otherwise, of course,

16     we would transfer any file over to Mr. Champion if that

17     is Mr. Haji's wish.

18           THE COURT:  Well, I haven't seen the documents

19     you are talking about, and I don't know if Mr. Champion

20     has.

21           MS. CHARTIER-MITTENDORF:  That is our concern.

22     We have the benefit of having worked on the case for

23     roughly a month where Mr. Champion does not.  And so the

24     concern is to articulate that there is a waivable

25     conflict, or there is a potential conflict, I don't think

1      reflects what we have seen so far.

2            THE COURT:  Mr. Fisher, anything?

3            MR. FISHER:  Yeah.  I suggest you ask

4      Ms. Turek.  She is the prime attorney on this.

5            THE COURT:  Ms. Turek?

6            MS. TUREK:  Your Honor, I would agree with what

7      Mr. Zambon and Ms. Chartier-Mittendorf has just stated.

8      We are just beginning to receive the discovery and

9      already I'm seeing a lot of red flags.  And actually, you

10     know, when each of us received an e-mail from

11     Mr. Champion indicating that he wanted us to sign up or

12     consent to substitute of counsel, that in and of itself,

13     I mean, occasionally a client does want to retain an

14     attorney and there's no issue.

15           The issue came when we e-mailed one another and

16     learned that Mr. Champion was trying to represent all

17     three.  And, clearly, based on just a preliminary review

18     of, you know, just one tenth of what we expect the

19     discovery will be, I think that the potential for

20     actual -- and actually there are some actual conflicts I

21     believe at this point given some statements that have

22     been made.  So I want to make sure that Mr. Muse Muse's

23     rights are protected and that he receives a fair trial,

24     and I just don't think one attorney is going to be able

25     to look after all three Defendants.

```
 1                And I think the real harm here, too, is if we

 2        proceed four, five, six, months down the road and then

 3        Mr. Champion were to want to withdraw from one or more of

 4        the cases, we would all be starting over and I think that

 5        would be harmful to some of the Defendants.

 6                THE COURT:  All right.  I'll skip you,

 7        Mr. Champion, because I've come up to a conclusion, I

 8        think.

 9                Mr. West, anything?

10                MR. WEST:  Thank you, Your Honor.  Just a few

11        quick points if I may.

12                First off, the Government took no position on

13        the defense's motion simply because it had enough

14        insufficient information on how the joint representation

15        came about, who the Defendants wanted or the arrangements

16        with the family, et cetera.  So I just want to clarify

17        the origin of our no position on that.

18                Certainly, at the time the motion was filed, I

19        had not been in contact or had no contact with

20        Mr. Champion and simply I did not have the information to

21        take a position on this issue.

22                And the Court has certainly raised in its dual

23        representation inquiries of potential conflict issues.

24        And I do agree with the Court that potential conflict

25        issues as noted do exist, but I'll stop there as to
```

1    whether those may develop down the road, in different

2    directions.

3         THE COURT:  What I'm going to do is not make a

4    decision today primarily because Mr. Champion hasn't had

5    an opportunity to speak with these other lawyers and see

6    where the -- you know, the possible conflicts arise.

7         And, you know, Mr. Champion as far as I know

8    is, you know, an upstanding lawyer, you know, follows the

9    Rules of Conduct for Michigan and the Federal Court,

10   which basically adopts those rules.  But he might not be

11   up to date on what's going on and what, you know, the

12   future holds; and, therefore, I'm just going to postpone

13   it for seven days and ask the parties to file a written

14   response and ask the parties -- I mean, I'll have an

15   order on this, so you will all have it, to give me what

16   your positions are regarding representation after a

17   conference.  And then I'm asking the lawyers here, to the

18   extent that it doesn't violate any conflict that you

19   might have, to share with Mr. Champion the possible

20   conflicts here.

21        For example, he might end up representing one

22   of the Defendants.  I don't know.  Or all three or none

23   at all.  And so the extent that you can do this without

24   violating the relationship that you have with your

25   particular lawyers now and to point out to Mr. Champion

1       possible problems.

2               Now, Mr. Champion is frowning for the first

3       time here today.  How does that hit you, sir?

4               MR. CHAMPION:  That seems fair to me.  I was

5       just wondering if the Court anticipated next Thursday,

6       the same time?

7               THE COURT:  I don't think I have to have

8       another hearing unless one of the parties wants it.  In

9       other words, tell me there is a conflict or, you know,

10      irreconcilable conflict or there isn't by next Thursday.

11      If there is, if you all agree, then that makes it easier

12      for me, then you might represent one or none; or if you

13      don't agree then I will make a ruling, okay?

14              MR. CHAMPION:  Okay.

15              THE COURT:  Okay, next Thursday then in

16      writing, all right.

17              Anything further from the Government?

18              MR. WEST:  No, Your Honor.  Thank you.

19              THE COURT:  Anything from any Defendant or any

20      Counsel?

21              MR. FISHER:  No, Your Honor.

22              MS. CHARTIER-MITTENDORF:  No, Your Honor.

23              MR. ZAMBON:  No, Your Honor.  Thank you.

24              THE COURT:  All right.  We are adjourned then.

25      Thank you.

1              MR. CHAMPION:  Would the Court prefer that I

2       file an appearance now or wait?

3              THE COURT:  Yeah, file it now so we know we are

4       talking to a real lawyer in this case.

5              Thank you, Mr. Champion.

6              Okay.  You are free to go.

7              MS. TUREK:  Thank you, Your Honor.

8              THE COURT:  And let me just say one thing to

9       the Defendants.  Mr. Zambon, Ms. Chartier-Mittendorf, let

10      me say one thing to the Defendants.

11             MS. CHARTIER-MITTENDORF:  Yes, Your Honor.

12             THE COURT:  Gentlemen, you are all high school

13      grads, you all went to college, think about what I told

14      you.  Think seriously about what I told you.  My job is

15      to give you a fair trial under the rules and the

16      Constitution of the United States of America.  And I'm

17      going to do that to the best of my ability.

18             You guys talk about it.  Okay.  Thank you.

19             MS. CHARTIER-MITTENDORF:  Thank you, Your

20      Honor.

21             MR. ZAMBON:  Thank you.

22             MS. TUREK:  Thank you, Your Honor.

23             (Proceedings conclude at 10:49 a.m.)

24

25

```
 1        STATE OF MICHIGAN)

 2                         ) ss

 3        COUNTY OF KENT   )

 4               I, Annette R. Blough, CRC/CRR/RPR/CSR-5191,

 5        do hereby certify that I reported the foregoing

 6        proceedings before the HONORABLE GORDON J. QUIST, Judge

 7        of the United States District Court, Western District of

 8        Michigan, Grand Rapids, Michigan; that the same was

 9        reduced to typewritten form, and that the attached 38

10        pages constitute a full, true and accurate transcript.

11               IN WITNESS WHEREOF, I have hereunto set my

12        hand this 13th day of March, 2019.

13

14

          _____
15        Annette R. Blough, CRC/CRR/RPR/CSR-5191 and Notary
          Public acting in Kent County, Michigan.
16        My Commission expires 1-17-2020

17

18

19

20

21

22

23

24

25
```