UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                  Case No. 1:19:CR:25

MUSE A. MUSE, MOHAMED S. HAJI,        HON. GORDON J. QUIST
and MOHAMUD A. MUSE,

    Defendants.
_____/

## ORDER DISQUALIFYING ATTORNEY CHAMPION
## FROM JOINT REPRESENTATION OF CODEFENDANTS

Defendants were initially charged with Conspiring to Provide Material Support or Resources to a Designated Foreign Terrorist Organization, in violation of 18 U.S.C. §2339B, in a Criminal Complaint filed on January 21, 2019. (ECF No. 1.) Based on Defendants' requests, each Defendant was appointed counsel. On January 25, 2019, the government moved for pretrial detention of Defendants, and a detention hearing began that day. The detention hearing was continued and rescheduled to January 31, 2019. In the interim, the Grand Jury returned an Indictment against Defendants on January 29, 2019, charging all three Defendants with Conspiracy to Provide Material Support to a Designated Foreign Terrorist Organization, in violation of 18 U.S.C. § 2339B(a)(1) (Count 1); and Attempting to Provide Material Support to a Designated Foreign Terrorist Organization, in violation of 18 U.S.C. § 2339B(a)(1) (Count 2). (ECF No. 25.)

In addition, the Indictment charged Defendant Muse A. Muse with False Statement in a Passport Application, in violation of 18 U.S.C. § 1542 (Count 3). (*Id.*)

## I. Background

On January 31, 2019, Defendants were arraigned on the Indictment. After the completion of testimony and arguments in connection with the detention hearing, the Court issued Orders of Detention for all Defendants. (ECF Nos. 36-38.)

On February 1, 2019, family representatives of Defendants met with Attorney James K. Champion to retain Attorney Champion to jointly defend all three Defendants. The next day, Attorney Champion met with Defendants in the Newaygo County Jail and obtained their signatures on a Consent Order for Substitution of Attorneys.

On February 4, 2019, Attorney Champion emailed appointed defense counsel and asked each of them to sign the proposed Order. Nothing in the record suggests that Attorney Champion had advised Defendants of potential conflicts or obtained conflict waivers. Appointed counsel met with their clients to discuss the matter and discussed the situation among themselves. Attorney Mary Chartier-Mittendorf, appointed counsel for Defendant Haji, indicated that she spoke with her client and that Defendant Haji expressed that he did not want Attorney Champion to replace Attorney Chartier-Mittendorf as defense counsel. (ECF No. 49-1.) Nothing in the record indicates the preferences of the other two Defendants. However, the absence of conflict waivers indicates that to date, Defendants have not agreed to Attorney Champion's joint representation in the face of potential or actual conflicts. Appointed counsel refused to sign the proposed Consent Order because they believed that actual or potential conflicts would disqualify Attorney Champion from joint representation of Defendants.

When Attorney Champion did not immediately file an appearance in the case, on February 15, 2019, appointed counsel filed a Joint Motion to Determine Counsel.  (ECF No. 39.)  Pursuant to Federal Rule of Criminal Procedure 44(c)(2), the Court ordered a hearing on the matter and ordered Attorney Champion to appear.  (ECF No. 41.)

## II.  Motion Hearing

Present for the hearing on the Joint Motion to Determine Counsel were Defendants, their appointed counsel, Attorney Champion, and representatives of the government.  The Court followed the outline suggested by § 1.08 of the Benchbook for U.S. District Court Judges, Fourth Edition, explaining to all parties the potential and actual conflicts presented by joint representation. The Court adjourned the hearing and issued its Order Setting Forth Directives From Motion Hearing, ordering (1) Attorney Champion to file his appearance in this case; (2) appointed counsel and Attorney Champion to confer regarding representation of Defendants; and (3) appointed counsel and Attorney Champion to file their respective positions regarding representation on or before March 7, 2019.  (ECF No. 46.)  Appointed counsel and Attorney Champion timely filed responses to the Court's February 28, 2019, Order, generally maintaining the same positions they had taken at the hearing.  (ECF Nos. 47, 49-51.)

At the motion hearing, Attorney Rick Zambon, appointed counsel for Defendant Mohamud Muse, stated that he believed an actual conflict was present based on what he learned through the detention hearing, the initial pretrial conference, and initial discovery in the case.  (Mot. Hearing Tr., ECF No. 52, PageID.166:3-9.)  According to Attorney Zambon, he had concerns regarding actual (and potential) conflicts for three reasons: (1) one Defendant had engaged in a four-hour post-Miranda interview in which that Defendant had likely made statements implicating the other

3

Defendants; (2) one Defendant had endorsed a statement written by Agent Dunham that was inculpatory; and (3) the alleged conspiracy took place over several years and there were thousands of pages of communications between Defendants in connection with the conspiracy charge. (*Id.* at PageID.166:10-24, 167:3-9.) Appointed counsel for Defendants Muse Muse and Mohamed Haji agreed with Attorney Zambon that some actual conflicts and many potential conflicts existed that would prevent joint representation. (*Id.* at PageID.170:8-14, 171:8-25.)

Attorney Champion admitted that there was a potential for conflict in this case. (*Id.* at PageID.161:24-162:1.) Attorney Champion expressed however, that he did not believe actual conflict existed because the government had not taken a position on the motion. (*Id.* at PageID.162:1-5.)

The government clarified that it had taken no position on the motion because it simply did not have enough information prior to the hearing. (*Id.* at PageID.172:12-17.) However, the government, like every other party involved in the hearing, stated that it recognized "potential conflict issues." (*Id.* at PageID.172:24-25.)

The Court expressed concern that a conflict would present itself if, among other reasons, the government offered a plea deal to whichever Defendant it determined had played a lesser role in the offense. (*Id.* at PageID.162:6-164:2.) In response, Attorney Champion stated that he was hired by the family, who expressed to Attorney Champion that they wanted one attorney representing all three Defendants so that Defendants would not turn against each other. (*Id.* at PageID.164:3-9.) Attorney Chartier-Mittendorf responded that separate representation of Defendants "doesn't mean that these three young men will split apart from each other and that the lawyers would not work together," but she still had serious concerns about the ability of one

4

attorney to adequately represent the interests of all Defendants.  (*Id*. at PageID.170:6-14.)**III.**

### Legal Standards

#### *Right to Effective Assistance of Counsel*

The Sixth Amendment to the Constitution guarantees the right to effective assistance of counsel in criminal cases.  U.S. Const. Amend. VI; *Wheat v. United States*, 486 U.S. 153, 158, 108 S. Ct. 1692, 1696 (1988).  Implicit in the right to effective assistance of counsel is the "correlative right to representation that is free from conflicts of interest."  *Wood v. Georgia*, 450 U.S. 261, 271, 101 S. Ct. 1097, 1103 (1981); *see also Moore v. Mitchell*, 708 F.3d 760, 777 (6th Cir. 2013) (highlighting a defendant's "right to conflict-free representation stem[ming] from the Sixth Amendment's guarantee of effective assistance of counsel").  And "while the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers."  *Wheat*, 486 U.S. at 159, 108 S. Ct. at 1697.  Thus, when a court is "confronted with and alerted to possible conflicts of interest," it "must take adequate steps to ascertain whether the conflicts warrant separate counsel."  *Id*. at 160, 108 S. Ct. at 1697.

The Supreme Court has repeatedly "recognized that multiple representation of criminal defendants engenders special dangers of which a court must be aware."  *Id*. at 159, 108 S. Ct. at 1697.  The Supreme Court in *Holloway v. Arkansas*, 435 U.S. 475, 489–90, 98 S. Ct. 1173, 1181, (1978), explained the special dangers of joint representation:

> Joint representation of conflicting interests is suspect because of what it tends to prevent the attorney from doing.  For example, in this case it may well have precluded defense counsel . . . from exploring possible plea negotiations and the possibility of an agreement to testify for the prosecution, provided a lesser charge

> or a favorable sentencing recommendation would be acceptable. Generally speaking, a conflict may also prevent an attorney from challenging the admission of evidence prejudicial to one client but perhaps favorable to another, or from arguing at the sentencing hearing the relative involvement and culpability of his clients in order to minimize the culpability of one by emphasizing that of another. Examples can be readily multiplied. The mere physical presence of an attorney does not fulfill the Sixth Amendment guarantee when the advocate's conflicting obligations have effectively sealed his lips on crucial matters.

These special dangers are graver when an attorney "propose[s] to defend three conspirators of varying stature in a complex" case. *Wheat*, 486 U.S. at 163-64, 108 S. Ct. at 1699.

To jointly represent codefendants in a criminal case, the attorney must first obtain from each defendant "a knowing, voluntary and intelligent waiver of his Sixth Amendment right to conflict-free counsel." *United States v. Krebs*, 788 F.2d 1166, 1172 (6th Cir. 1986). Yet, because the Sixth Amendment right to effective assistance of counsel is constitutionally guaranteed, the Court will "indulge every reasonable presumption against the waiver of fundamental rights." *Glasser v. United States*, 315 U.S. 60, 70, 62 S. Ct. 457, 465 (1942).

> A few bits of unforeseen testimony or a single previously unknown or unnoticed document may significantly shift the relationship between multiple defendants. These imponderables are difficult enough for a lawyer to assess, and even more difficult to convey by way of explanation to a criminal defendant untutored in the niceties of legal ethics. Nor is it amiss to observe that the willingness of an attorney to obtain such waivers from his clients may bear an inverse relation to the care with which he conveys all the necessary information to them.

*Wheat*, 486 U.S. at 163, 108 S. Ct. at 1699. Therefore, "the district court must be allowed substantial latitude in refusing waivers of conflicts of interest not only in those rare cases where an actual conflict may be demonstrated before trial, but in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses." *Id*.

### *Federal Rules of Criminal Procedure*

The Federal Rules of Criminal Procedure explicitly address the Court's responsibility with respect to ensuring Defendants' right to the effective assistance of counsel in the context of joint representation. Specifically, Rule 44(c)(2) states: ***"Unless there is good cause to believe that no conflict of interest is likely to arise, the court must take appropriate measures to protect each defendant's right to counsel."*** (Emphasis added).

"Avoiding a conflict-of-interest situation is in the first instance a responsibility of the attorney." Advisory Committee Notes to Rule 44(c). To the extent the attorney has any doubt regarding "the possibility that his judgment may be impaired or his loyalty divided if he accepts or continues the employment," "he is to resolve all doubts *against* the propriety of the representation." *Id*. (internal quotation marks omitted) (emphasis added). Despite the attorney's duty to consider and address conflicts of interest, the Court must make a separate inquiry because (1) "even the most diligent attorney may be unaware of facts giving rise to a potential conflict," and (2) the attorney "may not be totally disinterested." *Id*.

Once the Court finds the potential for conflict, it "must take appropriate measures to protect each defendant's right to counsel." This includes the possibility "that the court will order that the defendants be separately represented in subsequent proceedings in the case." *Id*.

### *Ethical Rules*

"Federal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." *Wheat*, 486 U.S. at 160, 108 S. Ct. at 1698. Attorneys practicing before this Court are subject to the Michigan Rules of Professional Conduct. *King v. Curtis*, 610 F. App'x 534, 537 (6th Cir. 2015). Rule 1.7(b) applies to proposed representation of codefendants and states:

7

> **(b)** A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:
>
>> (1) the lawyer reasonably believes the representation will not be adversely affected; and
>>
>> (2) the client consents after consultation. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved.

The Comments to Rule 1.7 further state: "The potential for conflict of interest in representing multiple defendants in a criminal case is so grave that ordinarily a lawyer should decline to represent more than one codefendant."  The American Bar Association Standards for Criminal Justice are even more direct: "defense counsel . . . should not undertake to represent more than one client in the same criminal case."  Standard 4-1.7(d).

## IV.  Analysis

All parties, including Attorney Champion, have recognized at least the potential for conflicts of interest to arise in joint representation of Defendants.   While Attorney Champion has furnished the Court with a form indicating Defendants' consent to substitution of counsel, Attorney Champion has not provided the Court with a document indicating that any Defendant has waived his right to conflict-free representation.  Moreover, when the Court asked Attorney Champion whether he had specifically discussed conflict issues with Defendants when he obtained their consent to substitution of counsel, Attorney Champion responded that he had not discussed the issues in-depth.  (Mot. Hearing Tr., ECF No. 52, PageID.164:22-25.)  The absence of waiver renders joint representation inappropriate.

However, more concerning to the Court is the presence of at least potential, and likely actual, conflicts of interest. The Court has a duty to take appropriate measures to protect Defendants' right to effective assistance of counsel—including disqualification of an attorney from jointly representing codefendants—"[u]nless there is good cause to believe that no conflict of interest is likely to arise." Fed. R. Crim. P. 44(c)(2). That does not exist in this case. Rather, based on the statements of the parties and judicial experience, conflicts of interest are likely to arise or may have already arisen. Thus, the Court must take the appropriate measures contemplated by Rule 44(c)(2) and disqualify Attorney Champion from joint representation of Defendants.[1]

### V. Conclusion

For the foregoing reasons,

**IT IS HEREBY ORDERED** that appointed counsel's Joint Motion to Determine Counsel (ECF No. 39) is **GRANTED** and Attorney Champion is disqualified from jointly representing Defendants.

**IT IS FURTHER ORDERED** that appointed counsel will remain counsel of record for Defendants unless or until the Court is informed that a single Defendant has chosen to retain Attorney Champion or another attorney of his choice.

**IT IS FURTHER ORDERED** that, if Attorney Champion does speak with any Defendant, he shall be accompanied by the court-appointed attorney for that Defendant.

---

[1] The Court recognizes and respects the families' wishes to have Defendants represented by a single attorney. However, the Court's obligation is to ensure a fair trial and effective assistance of counsel for Defendants, rather than their families. Moreover, the fact that Attorney Champion was retained by the family implicates Michigan Rule of Professional Conduct 1.8(f), which requires that an attorney take additional steps to avoid a conflict if the attorney accepts payment for representation from someone other than the client. If a single Defendant chooses to be represented by Attorney Champion or other counsel retained by his family, that attorney will have to comply with the mandates of Rule 1.8(f).

**IT IS FURTHER ORDERED** that if Attorney Champion intends to represent one Defendant, he must file his appearance on behalf of that Defendant within fourteen (14) days of the entry of this Order.  If Attorney Champion does not file such an appearance, he will not appear as counsel in this case.

**IT IS FURTHER ORDERED** that this Order is effective immediately.


Dated: March 28, 2019                                              /s/ Gordon J. Quist
                                                                                  GORDON J. QUIST
                                                                          UNITED STATES DISTRICT JUDGE