```
                    UNITED STATES DISTRICT COURT
                    WESTERN DISTRICT OF MICHIGAN
                          SOUTHERN DIVISION

      _____

      UNITED STATES OF AMERICA,

                    Plaintiff,
                                        DOCKET NO. 1:19-cr-25
      vs.


      MUSE ABDIKADIR MUSE,
      MOHAMED SALAT HAJI, and
      MOHAMUD ABDIKADIR MUSE,


                    Defendants.
      _____/



              TRANSCRIPT OF STATUS CONFERENCE

           BEFORE THE HONORABLE GORDON J. QUIST

                UNITED STATES DISTRICT JUDGE

                   GRAND RAPIDS, MICHIGAN

                      December 10, 2019


      Court Reporter:          Glenda Trexler
                               Official Court Reporter
                               United States District Court
                               685 Federal Building
                               110 Michigan Street, N.W.
                               Grand Rapids, Michigan 49503


      Proceedings reported by stenotype, transcript produced by

      computer-aided transcription.
```

```
 1    A P P E A R A N C E S:

 2    FOR THE GOVERNMENT:

 3         MR. CLAY M. WEST
           UNITED STATES ATTORNEY'S OFFICE
 4         330 Ionia Avenue, N.W.
           P.O. Box 208
 5         Grand Rapids, Michigan 49501-0208
           Phone:  (616) 456-2404
 6         Email:  Clay.M.West@usdoj.gov

 7    FOR THE DEFENDANT MUSE MUSE:

 8         MR. SANFORD ALLEN SCHULMAN
           SCHULMAN & ASSOCIATES, PC
 9         500 Griswold Street, Suite 2340
           Detroit, Michigan 48226
10         Phone:  (313) 963-4740
           Email: saschulman@comcast.net
11

12    FOR THE DEFENDANT MOHAMED SALAT HAJI:

13         MS. MARY CHARTIER-MITTENDORF
           CHARTIER & NYAMFUKUDZA, PLC
14         2295 Sower Boulevard
           Okemos, Michigan 48864
15         Phone:  (517) 885-3305
           Email: mary@cndefenders.com
16

17    FOR THE DEFENDANT MOHAMUD MUSE:

18         MR. JAMES K. CHAMPION
           Law OFFICES OF JAMES K. CHAMPION, PLLC
19         312 East Fulton
           Grand Rapids, Michigan 49503
20         Phone:  (616) 233-3287
           Email: champioj@hotmail.com
21

22                         *   *   *   *   *

23

24

25
```

```
 1                              Grand Rapids, Michigan
 2                              December 10, 2019
 3                              2:03 p.m.
 4                    P R O C E E D I N G S
 5          THE COURT:  Good afternoon.  Please be seated.
 6          Okay.  We're here for basically a status conference
 7  in the case of the United States of America against Muse Muse,
 8  Mohamed Haji, and Mohamud Muse, docket number 1:19-cr-25.
 9          Can I have the appearance of counsel, please.
10          MR. WEST:  Good afternoon, Your Honor, Clay West for
11  the United States.
12          THE COURT:  Thank you.
13          MR. WEST:  With me at counsel table is FBI
14  Special Agent Paul Dunham, the case agent.
15          THE COURT:  Thank you.
16          Talk into the microphone.  Just remain seated, and
17  then I can hear better.
18          Okay.  Next?  Mr. Champion.
19          MR. CHAMPION:  James Champion on behalf of the
20  Defendant Mohamud Muse, Your Honor.
21          THE COURT:  Thank you.
22          MS. CHARTIER:  Good afternoon, Mary Chartier on
23  behalf of Mohamed Haji who is seated to my right.
24          MR. SCHULMAN:  Good afternoon, Your Honor,
25  Sanford Schulman appearing on behalf of Muse Muse seated to my
```

1   left.  His family is also here.
2           *THE COURT:*  Thank you.  I'm glad you made it.
3           Okay.  Basically this is a status conference, but I
4   want to address a number of things and tell you where I am on
5   it.
6           First of all, I want to keep the case moving, and the
7   most important thing that's happened recently from my
8   perspective is that the government gave me a memo, which I have
9   just perused a couple of days ago, with its position regarding
10  confidentiality of information under the statute,
11  Classified Information Procedures Act.  So that's where I am.
12          I intend to address their motion fairly promptly,
13  keeping in mind the motion that was recently filed by the
14  defendants, an ex parte response setting forth nature and basis
15  of defense, which will be helpful to me probably in analyzing
16  the government's positions.
17          Tell me where I might be going wrong here, Mr. West,
18  if you would, and then I'll ask the other people too.
19          *MR. WEST:*  I agree with that assessment, Your Honor,
20  and I think resolution of that motion will allow us to perhaps
21  at a future status conference set a trial date in the matter
22  and motions deadlines.
23          *THE COURT:*  All right. How much -- well, I'll have
24  to figure it out myself, I guess, how much time it's going to
25  take me to look at this material.  So maybe I should just leave

1    it where we are right there.
2             I have the motion, like I said, of the defendants,
3    the ex parte response.  That seems to give me a framework or
4    at least an argument to consider when I go through the
5    government's presentations.
6             I have no comments on the merits of it at this point
7    in time because I haven't been able to look at the government's
8    material.  And it says "Critical discovery" -- this is the
9    motion -- "Critical discovery has been withheld from counsel."
10   That's more about the case than I know.  So I don't know how
11   they got that information, that critical discovery is being
12   withheld, but anyway, there we are on that.
13            Any response to any of my -- and now is the time to
14   talk.  That's why I wanted you here.  Just a minute.  Okay.  Go
15   ahead.
16            *MR. SCHULMAN:*  Judge, we did not file -- we did not
17   join in that motion, so when you say "defendants," it's not
18   Muse Muse.
19            *THE COURT:*  Right.  No.  The defendants -- there
20   were -- Mr. Haji and Mohamud Muse filed the motion.  I know you
21   didn't file the motion.  Right.
22            Okay.  Where am I going wrong here?  Mr. West, I'll
23   give you the first . . .
24            *MR. WEST:*  And, Your Honor, when you say critical
25   discovery being withheld, are you referencing the title?  And,

1  again, I don't want to dig into the defense filing, ex parte
2  filing, but I just didn't recognize that.
3           *THE COURT:*  Well, it just says ex parte response.  It
4  doesn't say it's confidential.
5           *MS. CHARTIER:*  Well, it was filed ex parte because it
6  does outline our defense.
7           *THE COURT:*  Right.
8           *MS. CHARTIER:*  So it is --
9           *THE COURT:*  That's the way I took it.
10          *MS. CHARTIER:*  Okay.  It is -- right -- I mean --
11          *THE COURT:*  But it wasn't being hidden like you say
12 the government is hiding things.  Did you intend that?  Because
13 if you did, it doesn't say so.
14          *MS. CHARTIER:*  No, we didn't say that they were
15 hiding things.  We said they were withholding things from us.
16 I think they have been very aboveboard about the fact that they
17 are not revealing certain documents, and we're saying --
18 Mr. Champion and I are saying we need those documents.
19          *THE COURT:*  All right.
20          *MR. WEST:*  And, Your Honor, just to that point, I
21 will represent that outside of the classified arena all
22 discovery the government has has been produced to date.  And
23 then obviously our motion concedes that there is material in
24 the classified arena, and that's the subject of the motion that
25 is pending before the Court right now.

1     *THE COURT:* Okay. How about that, then -- starting
2  with defense counsel -- how far are you in going through the
3  material the government has given to you? For example, on an
4  earlier hearing that we had on this case Mr. Champion said he
5  couldn't understand a lot of the material that was on tape.
6  And I don't know how many hours or minutes that you're looking
7  at. Where are you on that? Have you gone through, Counsel,
8  everything that the government has given you thus far?
9  Mr. Champion.
10    *MR. CHAMPION:* I wouldn't say everything, Your Honor.
11 Every time I think I'm seeing light at end of the tunnel I see
12 where there's more information, different electronic files. We
13 have two terabyte hard drive disks I'm trying to get through
14 and it's a lot.
15    *THE COURT:* Okay. Ms. Chartier?
16    *MS. CHARTIER:* We're well on our way. I would say if
17 we're not done, we're extremely close to being done, but -- and
18 the reason I say that is there's some Blu-ray disks which I
19 discussed with Mr. West this morning. So that's probably the
20 biggest thing that we still need to review. But for us it's
21 the classified documents that are really the big unknown for
22 us.
23    *THE COURT:* Okay. Mr. Schulman.
24    *MR. SCHULMAN:* Your Honor, we've completed discovery.
25 We're asking for a trial date be set.

1            To the classified information, we don't object to the
2    in camera review --
3            *THE COURT:*  Just would you sit down and speak into
4    the microphone, please.
5            *MR. SCHULMAN:*  We don't object to the in camera
6    review, but I came onboard late and we reviewed the discovery,
7    and we're ready for trial.
8            *THE COURT:*  I'm sorry, sir, I can't understand you.
9            *MR. SCHULMAN:*  We have reviewed the discovery and we
10   are ready for trial.
11           *THE COURT:*  Okay.  Okay.  So -- yeah.  So my goal is
12   to keep the case moving and get a firm trial date if we can,
13   and then I'll make some rulings regarding the Speedy Trial Act,
14   which is, I think, for all district judges now in the back of
15   your head.  Maybe I say "our head."  But anyway.
16           When do you think the case will be ready for the
17   government?
18           *MR. WEST:*  Your Honor, I think a good part of that
19   just depends upon -- you know, without delving into the
20   government's ex parte motion, I think that, you know, if the
21   Court proceeds down that road and at least approves the remedy
22   that the government has requested, there will be some
23   additional discovery.  So I think really the answer would be
24   upon the Court's ruling on that motion the government gets that
25   discovery to the defense and then the defense should have an

1    assessment at that point of needed time to review and then file
2    whatever motions pretrial beyond that point.
3            Certainly in the government's perspective it can be
4    ready for trial by, you know, March or April, probably April.
5    But, again, I think the key factor there will be, you know, the
6    defense ability to review the added material produced in
7    discovery from the pending motion.
8            *THE COURT:*  Okay.  I looked at the statute again
9    and -- the Speedy Trial Act statute, and I -- well, maybe I
10   just ought to say, I would like to get the case tried by, you
11   know, sometime in April anyway.  At the same time I don't want
12   to deprive anybody of a fair and adequate defense.  So maybe
13   we'll have to keep in touch with meetings like this.
14           Just let me check my notes.  I went through all of
15   this stuff this morning.
16           *MR. WEST:*  And, Your Honor, I think that's at least
17   from the government perspective a reasonable timeline, but,
18   again, I will defer to defense position once they, you know,
19   have an opportunity to review any additional discovery produced
20   from that -- from the ex parte process.
21           *THE COURT:*  Yeah, and I don't really know what we're
22   talking about, how much we're talking about.  And that's
23   probably good right now.  But I'm not going to try to guess at
24   it.
25           Anybody -- it sounds to me, then, like the defendants

1  are still preparing.  In other words, if I look at the Speedy
2  Trial Act, I see a lot of exceptions to the 70-day rule here.
3              *MS. CHARTIER:*  If I may, Your Honor?
4              *THE COURT:*  Go ahead.
5              *MS. CHARTIER:*  Mr. West and I had spoken earlier
6  today, and I think just pretty similar to what he said, I would
7  suggest, if I may, that once the Court makes its decision on
8  the classified material, I think that, for at least me, will
9  drive how much time, if any, I need.
10             So, for example, maybe we need an extra week to
11 review it, maybe we need a month to review it.  I don't know.
12 And I don't see how anyone can say that they do know because we
13 don't know what the Court's decision is going to be.
14             *THE COURT:*  And the Court doesn't have a clue, right.
15             *MS. CHARTIER:*  Right.  And we don't know the volume
16 yet.  So for me I think whether April is reasonable, it
17 certainly may be, but I think the first step in speaking with
18 Mr. West was once the Court reaches its decision, then we
19 assess if there are additional materials for us to review, and
20 then maybe we have a status conference where we're able to say,
21 okay, we think we need a week, or a month, or whatever it may
22 be.
23             *THE COURT:*  Mr. Champion, do you want to add or
24 subtract from anything she said?
25             *MR. CHAMPION:*  No, thank you, Your Honor.

1      *THE COURT:*  Mr. Schulman, anything?
2      *MR. SCHULMAN:*  Well, I would think the government
3  would know the volume of the material and they can give us an
4  estimate.  I mean, there's been other cases similar to this.  I
5  mean, to not set a trial date is not our preference at this
6  point.  This case has been pending since sometime in -- you
7  know, no trial date just means we can't even tell the
8  destination in terms of preparation and a deadline.  I mean, we
9  can always move the trial date, I suppose, but we're asking for
10 a trial date, a firm trial date.
11     *THE COURT:*  Well, the first time you were here I
12 remember you saying we'll try this case in eight weeks or
13 something like that, and here we are.
14     *MS. CHARTIER:*  The problem, if I may, with a firm
15 trial date is then everyone gets witnesses ready for that
16 date --
17     *THE COURT:*  I know.  I know.
18     *MS. CHARTIER:*  -- and then when it gets moved, that's
19 a -- I mean, the problem with that fluid date is it really
20 doesn't help with preparation.  At least not on the defense
21 side.
22     *THE COURT:*  All right.  Well, regarding the Speedy
23 Trial Act, I think we're exempt from the 70 days, whatever it
24 is, pursuant to 18 United States Code § 3161(h)(7) regarding
25 ends of justice continuance for one thing.  Following the

1 statute would make the proceeding impossible and result in a
2 miscarriage of justice if we jumped in without having the
3 opportunity for the defendants and the government to see their
4 facts and for me to rule on the government's request to keep
5 this material in confidence.
6 　　　　　The case is complex due to the nature of the
7 prosecution, which among other things requires the Court to get
8 involved from the perspective of the defendant to review
9 material pursuant to the Classified Information Procedures Act.
10 More time is needed for effective preparation.  If I'm
11 repeating myself a bit, I just received the material from the
12 government earlier in the case, and counsel will need more time
13 even after I complete my review of it.  And that's good enough
14 for right now.  So you can put that in the ends of justice and
15 the additional reasons that I gave.
16 　　　　　Anything further at this point in time?
17 　　　　　*MR. WEST:*  Your Honor, the government perspective
18 would just be that if the Court is able to rule on the ex parte
19 motions and defense responds either in December or January,
20 then we can have discovery provided through that process and
21 then a new status conference perhaps late January or early
22 February where defense could basically assess what they have
23 and then at that point should be able to give the Court a
24 timeline for when they will be ready for trial and motions,
25 et cetera.

1       *THE COURT:*  Well, I can see doing it in January.  I
2  can't see doing it -- getting everything done in December.
3       *MR. WEST:*  Absolutely.  And I'm not trying to rush
4  the Court.  I just threw out some various timelines.
5       *THE COURT:*  That's all right, Mr. West.  Relax.
6       Let me ask this:  I would have some questions, I
7  think, of you.  I assume it's appropriate when you came to my
8  chambers to discuss this.  Or that you would come to my
9  chambers to discuss this.  I didn't see any real procedure laid
10 out.  I might write an article for district judges sometime
11 what to do when you get one of these things.  Or do I just make
12 all these decisions on paper?  Because, you know, questions
13 like Ms. Chartier put in her brief and Mr. Champion put in the
14 brief, you know, just sort of jump out at you.
15      *MR. WEST:*  Yes, Your Honor, and I believe the way it
16 works is that Ms. Guerrero-Randall is the classified
17 information security officer in the case, and my understanding
18 is that at the ex parte hearing she would be present and she
19 would audio record so there will be a record of the ex parte --
20      *THE COURT:*  Are you -- when I say, well, "Hey," you
21 know, "Mr. West, what about this?" can I do that and have you
22 respond?
23      *MR. WEST:*  I believe so, Your Honor.  But if it's not
24 within the framework of something that I have -- if it's a
25 logistics question and Ms. Guerrero-Randall is present, I

```
 1   believe she can handle that, Your Honor.
 2               THE COURT:  Well, you know, let's just take a
 3   hypothetical here.  I give to you all the arguments
 4   Ms. Chartier gave to me.  What about that?  I mean, you know,
 5   this is all an entrapment and all these facts take a look at.
 6   Wouldn't that be something you might want to respond to?  I
 7   don't know.  I don't even know if you're entitled to respond to
 8   it, frankly.  This is the first one I've had.  Maybe I ought to
 9   ask Mr. Schulman over there.
10               MR. WEST:  And, Your Honor, if the Court would like,
11   I can certainly inquire about a National Security Division
12   attorney being present as well, which may facilitate the
13   process as well.
14               THE COURT:  Okay.  Is that a situation that the
15   government faces from time to time in these cases?
16               MR. WEST:  I think at times the DOJ National Security
17   Division can appear at the CIPA 4 hearings.  If the Court would
18   like someone who is -- and I'll be frank with the Court, I'm
19   not aware of a CIPA motion in this district at all -- but to
20   the degree that it would facilitate the process to have someone
21   from Washington who deals with these regularly, that's
22   certainly something that I can arrange, and that may simplify
23   or at least facilitate the Court with certain questions.
24               THE COURT:  Well, Mr. Schulman, have you been through
25   this before?  If you have, tell us what happens.
```

1   *MR. SCHULMAN:* As I recall, the lawyers got
2   clearance.  We had to go through clearance for the materials to
3   be reviewed.  And we had a protective order for the situation.
4   It's no different than a drug case where you get exposed
5   information that could be detrimental if released.  It's the
6   same type of trust.  And that's how we handled it is my
7   recollection.  The discussion about in chambers and having the
8   Court review it, in the end we had to get our own security
9   clearance so we could review the materials.
10  *THE COURT:* Okay.
11  *MR. WEST:* If I may, Your Honor, the government
12  position is that clearances are not necessary in the case
13  because the remedy that we propose is to simply declassify and
14  provide certain materials to defense.  So in that regard
15  defense clearances are unnecessary.  And there is --
16  *THE COURT:* That proves I didn't read the thing,
17  then, doesn't it?
18  *MR. WEST:* Well, I'm happy to have ready a brief on
19  that front as well.  Or at least an oral brief of the case law
20  on that front as well, Your Honor.
21  *THE COURT:* All right.
22  *MS. CHARTIER:* And, Your Honor, if the Court wants
23  additional briefing, we can.  And I obviously am speaking off
24  the top of my head, but I don't believe it is appropriate for
25  the government to essentially be in an ex parte proceeding with

1   the Court and the Court discusses our defense, meaning
2   Mr. Champion's and mine, for our clients, and then they get the
3   chance to say, "Oh, well, here is why they don't need that." I
4   mean, that, I think --
5            *THE COURT:* Well, we know your defense. I mean, you
6   just put that out in writing in detail.
7            *MS. CHARTIER:* Well, we actually -- no, that -- we
8   put the defense earlier on entrapment, but the ex parte
9   pleading goes into more depth about why we need the material.
10  And I don't think it's any surprise what the defense will be,
11  but the point is I don't think the government can sit in
12  an ex parte proceeding with the Court and then, you know,
13  essentially shoot down our defense. And that doesn't give us
14  the opportunity to then rebut what they are claiming.
15           *THE COURT:* Okay.
16           *MR. WEST:* Your Honor, I think the Asgari case cited
17  earlier is very clear on that point. But, again, I do agree
18  with the defense that I shouldn't just sit down and read their
19  brief, for example. I think the Court can simply incorporate
20  it into any questions it has as it reviews the motion.
21           *THE COURT:* Well, you say any questions that I have.
22  Who would I put these questions to if I had them? That was
23  really my question.
24           *MR. WEST:* Well, the government has a motion,
25  Your Honor, and the Court can certainly have any questions for

the government counsel, which will be primarily myself, I suspect Mr. O'Connor, and perhaps a DOJ attorney as well.

*THE COURT:* Okay.  Anything further from anyone?

*MS. CHARTIER:* No.  Thank you, Your Honor.

*THE COURT:* Okay.  I know it was a long trip for you, Mr. Schulman, and I apologize for that, for this, you know, for the shortness.  But it wasn't what I think you had anticipated based on my conversation with the other judge.  So I appreciate your being here.  All right.  We're adjourned.  Thank you.

*(Proceeding adjourned at 2:24 p.m.)*

\* \* \* \* \*

CERTIFICATE

I certify that the foregoing is a transcript from the Liberty Court Recording System digital recording of the proceedings in the above-entitled matter, transcribed to the best of my ability.

December 12, 2019

/s/ Glenda Trexler
Glenda Trexler, CSR-1436