UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                         No. 1:19-CR-025-1

        v.                                  Hon. Robert J. Jonker
                                                   Chief U.S. District Judge

MOHAMUD ABDIKADIR MUSE,
   A/K/A ABU OSAMA ALMUHAJIR,

        Defendant.
_____/

## GOVERNMENT'S SENTENCING MEMORANDUM

Defendant Mohamud Abdikadir Muse is a 25-year-old Lansing resident who pledged his allegiance to the foreign terrorist organization Islamic State of Iraq and al-Sham ("ISIS"), helped his brother (co-defendant Muse Muse) purchase his flight tickets to Somalia, discussed his own plan and timeline to travel to Somalia in support of ISIS, and drove Muse Muse to the airport for his scheduled series of flights to Somalia to join and wage jihad for ISIS. Law enforcement thwarted the conspiracy to provide material support for ISIS, arresting Defendant, his cousin Mohamed Haji ("Haji"), and Muse Muse at the Gerald R. Ford International Airport after Muse Muse tried to pass through the TSA checkpoint. Defendant chose to devote himself to a terrorist organization dedicated to the murder of Americans and other "infidels" and his commitment to its mission of terror, murder, and hate was absolute. He wrote about his support for ISIS and submitted his pledge of allegiance to ISIS along with his brother and cousin.

To adequately protect the public and impose sufficient punishment to deter future acts of terrorism, the Government seeks a prison sentence of at least 198 months and a lifetime of supervised release.  A 16.5-year sentence would reflect the extremely serious nature of Defendant's terrorism offense, provide just punishment for his conduct, deter and prevent him from resuming his activities in support of radical Islamic terrorist ideology, and deter others from seeking to join and serve violent terrorist groups such as ISIS.

## BACKGROUND

The following is a summary of the key events pertaining to Defendant's offense conduct.  Between January 2017 and January 21, 2019, Defendant conspired with his co-defendants Muse Muse and Haji to provide material support and resources, including personnel, to ISIS.  Defendant knew that ISIS was a designated foreign terrorist organization and engaged in terrorist activity.

Throughout the conspiracy, Defendant participated in numerous conversations with his co-defendants about the virtues of ISIS and the desire to travel to Somalia to join ISIS, which is referred to as making "hijra."  Defendant, Muse Muse, and Haji all adopted fighter ("kunya") aliases by which they would be known when fighting in Somalia for ISIS.  Defendant chose the kunya alias "Abu Osama Almuhajir" and caused the creation of a Facebook account in that name.  Defendant recorded a bayah video (a pledge to ISIS) in November 2018 that was submitted to individuals the defendants believed represented ISIS.

In December 2018 and January 2019, Defendant and Haji discussed their plans and timeline to travel to Somalia in support of ISIS. Defendant and Haji agreed to leave together shortly after Muse Muse.

Between December 2018 and January 2019, Muse Muse coordinated with an individual he believed to be a Somali ISIS fighter to receive $1,200 in $300 increments through the MoneyGram currency transfer service. Muse Muse picked up $300 from MoneyGram on January 4, 2019 and arranged for Defendant and Haji to each pick up $300 from MoneyGram on January 5, 2019 and pass it to Muse Muse. On January 5, 2019, Defendant picked up $300 from MoneyGram on and passed it to Muse Muse. On January 7, 2019, Muse Muse used those MoneyGram funds and some of his own funds to purchase tickets for a series of airline flights, the first of which departed on January 21, 2019 from Grand Rapids, Michigan. Muse Muse's final destination was Mogadishu, Somalia, where he believed he would meet an ISIS representative.

On January 21, 2019, Defendant, Muse Muse, and Haji all traveled by automobile from Lansing to the Gerald R. Ford International Airport in Grand Rapids to attempt to help Muse Muse join ISIS in Somalia. Defendant drove the other two and parked the vehicle in the short-term lot. Defendant, Muse Muse, and Haji all entered the terminal together. Muse Muse proceeded to the airline ticket counter, obtained a boarding pass for his scheduled flight, checked one bag, and proceeded to the TSA security checkpoint. As Muse Muse was completing the TSA security process, he was arrested in the airport terminal by the FBI. Shortly thereafter, Defendant and Haji were arrested in the airport terminal.

## DISCUSSION

On January 30, 2020, Defendant pleaded guilty to conspiring to provide material support to the designated foreign terrorist organization ISIS pursuant to a plea agreement with the Government (R.102: Plea Agrm't, PageID.670-682). Under the terms of the Plea Agreement, the parties stipulated to application of the terrorism enhancement in USSG § 3A1.4 and a lifetime term of supervised release. (*Id.*, PageID.677.) The statutory maximum sentence of imprisonment this Court may impose is 20 years.[1]

**I.    The Advisory Guideline Sentence Before Application of the Government's Substantial Assistance Motion is 240 Months of Imprisonment.**

The United States has no objection to the advisory federal Sentencing Guideline calculations in the revised presentence investigation report ("PSR") filed on August 2, 2021. The Guidelines call for a 240-month prison sentence (the statutory maximum) and up to a lifetime of supervised release.

The offense level is calculated as follows:

- The Guideline that applies to a violation of 18 U.S.C. § 2339B is USSG § 2M5.3(a), which yields a base offense level of 26. (PSR, ¶ 80.)

- Pursuant to USSG § 3A1.4(a) because the offense is a felony that involved, or was intended to promote, a federal crime of terrorism, 12 levels are added. The adjusted offense level for Count 1 therefore is 38. (PSR, ¶¶ 82, 85.)

- Assuming Defendant continues to demonstrate acceptance of responsibility prior to the imposition of sentence, see USSG § 3E1.1(a), and because he timely notified authorities of his intention to plead

---

[1] In 2015, Congress increased the statutory maximum penalty for violating Section 2339B from 15 years to 20 years in prison, which expresses the legislature's view on the severity of this offense and the need to adequately punish those who commit it.

guilty, *see id.* § 3E1.1(b), the offense level is decreased by three levels. (PSR ¶¶ 87-88.)

- The total offense level is 35. (*Id.* ¶ 89.)

Defendant does not have any known criminal convictions. (*Id.* ¶¶ 91-92.) Because the offense involved a federal crime of terrorism, the applicable criminal history category is VI, pursuant to USSG § 3A1.4(b). (*Id.* ¶ 94.) A total offense level of 35 and a criminal history category of VI result in a Guideline range of 292 to 365 months' imprisonment. However, the statutory maximum term of imprisonment for a conviction on Count 1 is 20 years in prison. When the statutory maximum sentence is less than the minimum of the applicable Guideline range, the maximum sentence is the Guideline sentence. *See* USSG § 5G1.1(a). Accordingly, the advisory Guideline sentence (before consideration of the Government's motion for downward departure) is 240 months in federal prison.

By separate motion, the Government has moved for a 42-month downward departure pursuant to USSG § 5K1.1 to reflect Defendant's substantial assistance in the prosecution of another person who has committed an offense. That is the equivalent of a two-level departure. If this Court grants the motion and applies the Government's recommended departure, the final advisory Guideline sentence is 198 months.

II. **The Statutory Sentencing Factors Call for a Sentence of at Least 198 Months of Imprisonment.**

   A. **The Nature and Seriousness of Defendant's Conduct and the Need for Just Punishment Warrant a Substantial Custodial Sentence.**

The indisputably serious nature of Defendant's conduct, and the need to

5

impose just punishment, weigh decidedly in favor of a custodial sentence of at least 198 months. *See* 18 U.S.C. § 3553(a)(1), (a)(2)(A). Defendant, a naturalized U.S. citizen born in Kenya, arrived in the United States as a minor with his family as refugees from Somalia. Nonetheless, Defendant chose to devote himself to a brutally violent terrorist group that is dedicated to murdering U.S. citizens and attacking U.S. interests here and abroad. Defendant's frequent Facebook postings in support of ISIS and its violent attacks throughout the world caught the FBI's attention in April of 2016, which led to the investigation and prosecution of this matter. Two examples of the imagery from his postings include the following:

 

(Sent. Ex. 1.)

Defendant introduced Muse Muse and Haji to ISIS, and debated Muse Muse in November 2016 as to who supports ISIS the most. Defendant communicated with Haji in January 2017 about joining ISIS and fighting jihad on behalf of ISIS. In February 2017, Defendant and Haji discussed new ISIS videos depicting violent killings. Defendant remained engaged throughout as Muse Muse set in motion his plan to travel to Somalia on behalf of ISIS. Defendant chose his fighter alias and recorded his bayah pledge video in November 2018, discussed plans to travel to

6

Somalia with Haji after Muse Muse arrived there, aided Muse Muse with purchasing his airline ticket to Somalia, and drove the vehicle that transported Muse Muse to the airport on the date of his series of flights to Somalia.  The FBI's investigative efforts prevented all three defendants from joining ISIS and furthering its deadly and destructive mission.  Defendant was devoted to ISIS's violent ideology.  For example:

### 1. Mohamud Muse Taught his Co-Defendants About ISIS.

As early as November 2016, Defendant groomed his younger brother Muse Muse regarding dowla[2] and inquired whether Muse Muse could report on any updates regarding the group.  When Muse Muse told Defendant[3] "Im not seeing them everytime I search for them" and "But I have not forgetten [sic] the state" Defendant replied, "No I think u did" and "U barely even talk bout dowla no more akh."[4]  Muse Muse pushed back and claimed that he was now more concerned and inquisitive about ISIS than Defendant.  (Sent. Ex. 2.)  Defendant played the same role with Haji as early as January 2017, discussing with Haji their mutual support for the group and its videos where prisoners are burned alive (Sent. Ex. 3).[5]  Several weeks later, Defendant exhorted Haji to "join Dawlah and fight jihad."  (Sent. Ex. 4.)  Defendant engaged Haji on the subject ISIS, as he did with Muse Muse, asking Haji if there was "[a]nything new on dawlah" in February 2017 (Sent. Ex. 5),

---

[2] *Dawla/Dawlah/Dowla* is the Islamic State of Iraq and al-Sham (ISIS).
[3] One of Defendant's Facebook accounts used the name "Mohamud A Musa."
[4] *Akhi* means my brother.
[5] One of Haji's Facebook accounts used the name "Ibrahim Mohamed Salat."

7

discussing in detail the graphic content of ISIS killing videos (Sent. Ex. 6.), and updating his progress on contacting other mujahid.[6] (Sent. Ex. 7.)

### 2. Defendant Wanted to Join and Support ISIS.

In June 2017, Defendant advised another individual on Facebook that he wanted to join ISIS and the fight and asked for help: "I have a brother of mine trying help me but i need all the help i can get." (Sent. Ex. 8.) Defendant also asked about the vetting process used by ISIS to screen new recruits (known as *tazkia*) and how Defendant's language skills may aid that process: "I speak kiziguia[7] so maybe I can be a transliater [sic]." (*Id.*)

### 3. Defendant Saved Money for a Trip Overseas.

In August 2017, Defendant advised an individual he believed to be an ISIS recruiter in Egypt that he was saving money to pay for a trip overseas, and that he was planning to buy a handgun for target practice. (Sent. Ex. 9.) In January 2018, Defendant reaffirmed to this same individual that he was still interested in jihad and that he thought he may be able to travel a few months after he got married. (Sent. Ex. 10.)

### 4. Defendant proclaimed: "I want to kill kuffar."[8]

On December 12, 2018, just 38 days prior to driving to the Gerald R. Ford International Airport in support of Muse Muse's travel, Defendant bragged to an individual he believed was an ISIS recruiter that "I was supporting dowla in my

---

[6] *Mujahid* means someone who carries out Jihad; a holy warrior.
[7] Kizigua/Kiziguua is a dialect of the Somali Bantu. *See* Home Office, UK Border Agency, *Country of Origin Information Report*, p.136 (May 27, 2011), available at https://www.justice.gov/sites/default/files/eoir/legacy/2013/06/12/somalia-0511.pdf.
[8] *Kuffar* refers to individuals who do not believe in radical Islamic extremism.

8

family before anyone did." (Sent Ex. 11.)⁹ Defendant's recent marriage was "the only thing stopping me from making Hijra and coming there right now." (*Id.*) Defendant then summarized his intentions regarding his own travel overseas in support of ISIS: "Brother, I just want Islam to win I want to kill kuffar." (Sent. Ex. 12.) Defendant also confirmed with this same individual that he had been in touch with his brother (Muse Muse) and received his cousin's (Haji's) bayah pledge video. (*Id.*)

### 5. Defendant Wanted to Travel to Join ISIS with Haji.

On January 8, 2019, Defendant reaffirmed to the individual he believed was an ISIS recruiter that that he and Haji "talked and agreed to leave together." (Sent. Ex. 13.)¹⁰ Defendant also revealed that he had recruited another "brother from Facebook" from Nigeria and that "he might give bayah soon." (*Id.*) Lastly, he advised that he "might have to leave my wife behind" when he traveled to Somalia on behalf of ISIS and that "Allah will give me better." (Sent. Ex. 14.)

In sum, Defendant was committed to advancing ISIS's mission of violence, aiding the cause by introducing his brother Muse Muse and cousin Haji to ISIS and radicalizing them to its aims. That none of the defendants ever succeeded in actually joining ISIS overseas or committing murderous violence in its name does not ameliorate their expressed intent and firmly held desire to do so. There is no doubt that Defendant, Muse Muse, and Haji all fully intended to carry out their mission. Indeed, Muse Muse was arrested while navigating the TSA security

---

⁹ One of Defendant's Facebook accounts used the name "Abu Osama."
¹⁰ One of Defendant's Facebook accounts used the name "Abu Musab Al Muhajir."

9

checkpoint after checking in for a flight itinerary with a final destination of Somalia where he believed he was joining ISIS in the fight. Defendant and Haji were at the airport seeing Muse Muse off for this mission. The fact that law enforcement was able to prevent three American citizens from joining ISIS is a testament to the efforts and diligence of the FBI, not a mitigating factor for Defendant.

### B. A Custodial Sentence of at Least 198 months is Necessary to Protect the Public from Further Terrorism Crimes.

The need to protect the public from further crimes of this defendant is a paramount consideration here, and strongly supports imposition of a 198-month sentence. *See* 18 U.S.C. § 3553(a)(2)(C). Terrorism crimes carry a higher risk of recidivism and rehabilitation of terrorism defendants like Mohamud Muse is difficult. *United States v. Meskini*, 319 F.3d 88, 91-92 (2d Cir. 2003) (noting the link between the "difficulty of deterring and rehabilitating" terrorism defendants and the conclusion that "terrorists and their supporters should be incapacitated for a longer period of time"). Defendant's absolute commitment to ISIS and the radical Islamist terrorist theology that it espouses firmly supports the Government's view that he should be incarcerated for at least 198 months.

Defendant is only 25 years old and fully capable of resuming support for ISIS and radical Islamic theology. His conduct demonstrates that he may seek to resume his support for ISIS or another group espousing the anti-American terrorist ideology that he embraced. And the ISIS threat remains. The 2021 Annual Threat Assessment of the U.S. Intelligence Community indicates that "ISIS and al-Qaeda remain the greatest Sunni terrorist threats to U.S. interests overseas; they also

seek to conduct attacks inside the United States. . . . We see this lone-actor threat manifested both within homegrown violent extremists (HVEs), who are inspired by al-Qaida and ISIS . . . ." *See* Office of the Director of National Intelligence, "Annual Threat Assessment of the U.S. Intelligence Community," April 9, 2021.[11] The need to deter and prevent Defendant from resuming his support for ISIS overwhelmingly militates in favor of a significant custodial sentence.

A period of lifetime supervised release also is called for in this case. Lifetime supervised release is needed in order to adequately protect the public from this ISIS supporter who casually chatted in December 2018 about killing "kuffar." While the Government earnestly hopes Defendant will be rehabilitated and renounce his commitment to wage violent jihad, the possibility of his permanent rehabilitation will be enhanced by a requirement of lifetime supervised release where his conduct and treatment can be closely monitored.

### C. A Sentence of At Least 198 Months Will Avoid Creating Unwarranted Sentence Disparities.

Across the country, terrorism defendants who have attempted to travel, successfully traveled, or assisted another person in traveling to join and serve ISIS or other terrorist organizations have received substantial custodial sentences. A sentence of at least 198 months in this case is reasonable and warranted in order to avoid creating sentencing disparities across comparable terrorism cases. Section 3553(a)(6) is concerned with national disparities "among the many defendants with similar criminal backgrounds convicted of similar criminal conduct." *United States*

---

[11] Available at https://www.dni.gov/files/ODNI/documents/assessments/ATA-2021-Unclassified-Report.pdf.

11

*v. Simmons*, 501 F.3d 620 (6th Cir. 2007), citing *United States v. Poynter*, 495 F.3d 349, 351-56 (6th Cir. 2007); *United States v. LaSalle*, 948 F.2d 215, 218 (6th Cir. 1991); *United States v. Parker*, 912 F.2d 156, 158 (6th Cir. 1990). *See also United States v. Rayyan*, 885 F.3d 436, 442 (6th Cir. 2018) ("§ 3553(a)(6) concerns national disparities within a class of similar defendants, not disparities between one defendant and another . . . . The district court was free to focus on the risks and circumstances of the defendant in front of him, not the one sentenced by another judge.") (internal citation omitted). The Sixth Circuit has recognized that "[a] district judge [ ] may exercise his or her discretion and determine a defendant's sentence in light of a co-defendant's sentence." *Simmons*, 501 F.3d at 624, *citing United States v. Nelson*, 918 F.2d 1268, 1272-73 (6th Cir. 1990). "That action, however, would be a discretionary one because the district court is not required to consider that type of disparity under § 3553(a)(6)." *Id.*, citing *LaSalle*, 948 F.2d at 218; *accord Parker*, 462 F.3d at 277 ("[A]lthough § 3553 does not require district court's to consider sentencing disparities among co-defendants, it does not prohibit them from doing so.").

12

### D. A Sentence of at Least 198 Months is Necessary to Afford Adequate Deterrence and to Promote Respect for the Law.

The Government's recommended sentence is necessary in order to adequately deter criminal conduct – in this case, terrorism aimed at harming Americans and American interests – and to promote the law prohibiting such destructive conduct. 18 U.S.C. § 3553(a)(2)(A)-(B). "In no area can the need for adequate deterrence be greater than in terrorism cases, with their potential for devastating loss of innocent life." *United States v. Stewart*, 590 F.3d 93, 181 (2d Cir. 2009) (Walker, J. concurring).

The capacity of a terrorist organization like ISIS to thrive hinges in large part on his ability to grow its membership – to attract, indoctrinate, and enlist new followers, like Defendant – who are committed to advancing and serving ISIS' murderous agenda or die trying. It is only through this support that ISIS and other terrorist groups are able to fulfill their missions of hate, murder, and violence. Deterring such conduct is particularly important in today's environment, when so many young people in the West, including in the United States, have become radicalized by jihadist propaganda online and have either traveled or tried to travel to the Middle East to join ISIS and other terrorist groups.

It is vital for our country's national security that other men and women who reside in the Western District of Michigan and elsewhere, when exposed to hateful extremist teaching, be deterred from choosing to follow to path similar to that of Mohamud Muse and his co-defendants and engaging in potentially devastating conduct in support of such groups. It is important for those contemplating joining a

13

terrorist organization to know that the consequences for such conduct are serious. And it is important for the public to know that those who seek to join and support terrorist organizations will face serious punishment preventing them from causing harm to society. A lengthy prison sentence is necessary and warranted in this case to serve the pressing need for general deterrence of such terrorism offenses.

## CONCLUSION

For the forgoing reasons, the Government seeks a sentence of at least 198 months in prison and a lifetime of supervised release for Defendant.

                                          Respectfully submitted,

                                          ANDREW BYERLY BIRGE
                                          United States Attorney

Dated: August 5, 2021                /s/ *Clay M. West*
                                          /s/ *Christopher M. O'Connor*
                                          Assistant United States Attorneys

                                          United States Attorney's Office
                                          P.O. Box 208
                                          Grand Rapids, Michigan 49501-0208
                                          (616) 456-2404
                                          clay.m.west@usdoj.gov
                                          christopher.oconnor@usdoj.gov